UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KEITH IRWIN and PATRICIA
BADISH, on behalf of
themselves and all others
similarly situated,

       Plaintiffs,           CIVIL ACTION

    v.                   NO. 1:09-CV-0033-CAP

RBS WORLDPAY, INC.,

       Defendant.

## O R D E R

This matter is pending before the court on the defendant's motion to dismiss plaintiffs' second amended complaint [Doc. No. 51] and the parties' joint motion for leave to file excess pages [Doc. No. 57]. As an initial matter, the court hereby GRANTS the parties' joint motion for leave to file excess pages [Doc. No. 57].

## I.  Factual and Procedural Background

The plaintiffs filed their second amended complaint ("SAC") [Doc. No. 48] as a class action lawsuit on July 31, 2009, and set forth the following facts. The class representatives in the lawsuit are Keith Irwin, a resident of Pennsylvania, and Patricia Badish, a resident of Florida. The defendant, RBS Worldpay, Inc. ("RBSW"), is incorporated under the laws of the state of Georgia, and its headquarters are located at 600 Morgan Falls Road, Atlanta,

Georgia.[1]  Irwin and Badish filed this class action against RBSW on behalf of individuals whose confidential personal identifying information and/or financial data (collectively "PFI") may have been improperly disclosed.

As stated in the SAC, RBSW had Irwin and Badish's PFI in order to provide financial services.[2]  On or about November 8, 2008, unknown individuals used closed payroll and gift cards created with certain class members' PFI to make unauthorized withdrawals, totaling $9,000,000.00, from ATM machines in several cities across the globe.  Upon investigation into the crime, RBSW quickly learned of an unauthorized user's access into RBSW's computer server, which contained the PFI of over a million individuals.  RBSW subsequently issued a press release on December 23, 2008, and then started sending out notice letters, which varied depending on the type of

---

[1] RBSW is the United States payment processing division of the Royal Bank of Scotland Group, PLC, and is a non-bank subsidiary of the Citizens Financial Group. More specifically, RBSW provides electronic payment processing services - including credit cards, debit cards, EBT, checks, gift , e-commerce, customer loyalty cards, fleet cards, prepaid cards, ATM processing and cash management services.

[2] More specifically, on or about December 22, 2005, Irwin received a gift card through a point reward program at his bank, Citizens Bank.  RBSW processed the gift card and obtained Irwin's personal information through that transaction.  With regard to Badish, she contracted with RBSW for merchant acquiring services for her retail establishment from approximately 2002 through August 2007.

account the recipient had with RBSW, to individuals who were potentially affected by the data security breach into RBSW's computer system. Irwin and Badish received letters stating that their PFI may have been accessed upon an intrusion by an unauthorized person into RBSW's computer system.[3] In Irwin's letter, RBSW stated that he would not be held responsible for any unauthorized activity on his card, and he was even offered one year of free credit monitoring services. All of the letters RBSW sent out provided a toll-free number for recipients to call for further assistance and then recommended a list of steps to take in order to help prevent identity theft.

The SAC identifies three causes of action: Count I - Negligence; Count II - Breach of Implied Contracts; and Count III - Breach of Third-Party Beneficiary of Contract. In each of the counts, the plaintiffs and the class claim as damages that they suffered and will continue to suffer actual damages, including but not limited to the out-of-pocket cost and time spent on bank and credit monitoring, interest on unauthorized bank and credit charges, identity theft, loss of privacy and other economic and noneconomic harm. See Pl.'s Second Amend. Compl., Doc. No. 48,

---

[3] Specifically, Irwin received his letter on December 23, 2008 [Doc. No. 47, Attach. 2], and Badish received her letter on January 13, 2009 [Doc. No. 47, Attach. 3].

¶¶ 81, 90, and 101.  Additionally, in Count III, the plaintiffs claim that "[t]he compromise of Plaintiffs' and Class Members' personal and financial information is a requisite injury as it demonstrates an invasion of their legally protected interest to have that information safeguarded and protected while in RBSW's custody."  Id. at ¶ 97.  RBSW filed its motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) (lack of standing) and 12(b)(6) (failure to state a claim).

## II. Motion to Dismiss under Rule 12(b)(1) (lack of standing)

### A.   Rule 12(b)(1) Legal Standard

A motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(1) seeks dismissal due to the lack of subject matter jurisdiction.  Before a federal court can consider the merits of a legal claim, "the person seeking to invoke the court's jurisdiction must establish the requisite standing to sue." Whitemore v. Arkansas, 495 U.S. 149, 154 (1990).  In this case, the defendant is challenging whether the plaintiffs' have in fact suffered an injury and thus their Article III standing to sue.

Article III of the Constitution limits the judicial power of federal courts to "cases and controversies" between parties. U.S. Const. Art. 3, § 2.  In order to satisfy the constitutional standing requirements, a plaintiff must establish that he or she has (1) suffered an injury in fact, an invasion of a legally

protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical, (2) which is fairly traceable to the challenged act, and (3) is likely to be redressed by a favorable decision. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992). Further, to establish an "injury in fact," the plaintiff bears the burden of showing that he has "sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 101-02 (1983) (citations and internal quotation marks omitted).

In determining standing, the court must consider the complaint and examine "[the] allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." <u>International Primate Protection League v. Administrators of Tulane</u>, 500 U.S. 72, 77 (1992). Furthermore, on a motion to dismiss, the court is "not bound to accept as a true a legal conclusion couched as a factual allegation . . . ." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986). In its motion to dismiss under Rule 12(b)(1), RBSW attacks the plaintiffs' Article III standing by arguing that the plaintiffs do not have any actual or

imminent injury in fact and thus the court lacks subject matter jurisdiction to hear this case.

**B.   Parties' Arguments**

As identified above, the plaintiffs claim as damages: the out-of-pocket cost and time spent on bank and credit monitoring, interest on unauthorized bank and credit charges,[4] identity theft, loss of privacy and other economic and noneconomic harm, and the compromise (or exposure) of the plaintiffs' PFI.  According to RBSW, the plaintiffs' alleged damages do not amount to cognizable harm sufficient to confer Article III standing and thus this court lacks subject matter jurisdiction.[5]   More specifically, RBSW contends that the damages - (1) the exposure of PFI alone, (2) the allegations of "identity theft" without corresponding harm,  and (3) the risk of future identity theft and associated mitigation efforts - do not constitute an actual injury.  In response, the

---

[4] The court notes that neither Irwin or Badish allege any specific facts identifying interest on unauthorized bank and credit charges as damages in the SAC.  Accordingly, the court concludes that neither Irwin or Badish suffered such damages.

[5] Additionally, RBSW argues that the plaintiffs failed to adequately plead the causation element (second element) of Article III standing.  However, upon review of the SAC, the court concludes that the plaintiffs did in fact adequately plead the causation element of Article III standing by alleging that the data security breach caused the alleged damages, and thus will not further discuss this argument.

plaintiffs argue that RBSW is wrong and assert that recent trends in data breach cases support standing in this matter.

**C.  Court's Analysis**

After careful review and consideration of the parties' briefs and arguments therein, the court concludes that the following with regard to the plaintiffs' Article III standing.

**1.  The Exposure of PFI Alone**

The plaintiffs contend that mere a "exposure of PFI" is a sufficient injury for purposes of Article III because they have a property interest in their PFI and can recover damages for RBSW's failure to prevent its exposure.  In support of this proposition, the plaintiff's cite to an assortment of cases from various jurisdictions, to include criminal cases from the Eleventh Circuit Court of Appeals, <u>United States v. Uyaniker</u>, No. 03-00212-CR-1-1, 2006 WL 1626964, *2 (11th Cir. 2006), the Georgia Supreme Court, <u>State v. Mayze</u>, 622 S.E.2d 836 (Ga. 2005), and the Georgia Court of Appeals, <u>Vicks v. State</u>, 657 S.E.2d 874 (Ga. Ct. App. 2008). However, <u>Uyaniker</u> examined a defendant's appeal of his prison sentence and the restitution order issued by the lower court; the <u>Mayze</u> decision merely reviewed the proper venue for enforcing a criminal statute; and <u>Vicks</u> involved the identity of a criminal defendant accused of assaulting someone after an Atlanta Braves baseball game.  In fact, the plaintiffs cite almost exclusively to

7

criminal cases and failed to cite the court to any binding, civil legal authority to support its theory that "exposure of PFI" is sufficient to meet the injury in fact element of standing.[6] Accordingly, the court concludes that the mere exposure of PFI is not sufficient to constitute actual injury for purposes of Article III standing and dismisses such claims from the SAC.

### 2.    The Allegations of "Identity Theft"

In the SAC, both Irwin and Badish allege that they have been victims of identity theft.  In support of this claim, Irwin alleges that (1) his credit reports indicate that his PFI was unknowingly used to apply for credit with First USA, NA;[7] (2) a Lexis-Nexis public records report indicates that Thomas J. Anthony, a person unknown to Irwin, is using Irwin's social security number; and (3) Irwin's March 6, 2009, credit report lists a previous address that is unknown to him.  Meanwhile, Badish, in support of her allegation that she has been a victim of identity theft, alleges that in March 2009, she noted a charge from Staples on her bank statement that

---

[6] The lone civil case cited, <u>Korman v. The Walking Co.</u>, 503 F.Supp.2d 755 (E.D. Pa. 2007), involves a customer's standing to sue for failure to redact a credit card number on a receipt in violation of the Fair and Accurate Credit Transactions Act of 2003.

[7] Specifically, Irwin asserts that his credit reports, dated March 26, 2009, and June 9, 2009, indicated that credit was applied for with First USA, NA on January 21, 2009, and on May 21, 2009. Irwin maintains that he is unfamiliar with First USA, NA and the associated credit applications.

was unknown to her, but later removed by the bank.  In the motion

to dismiss, RBSW does not argue a victim of alleged identity theft

lacks Article III standing.    Instead, RBSW contends that a

plaintiff who alleges to be a victim of identity theft lacks

Article III standing if he or she is unable to specify any harm

caused by the alleged theft.

As discussed above, "for the purposes of this motion to

dismiss . . . , [the court is] not bound to accept as true a legal

conclusion couched as a factual allegation." Papasan, 478 U.S. at

286.[8]   In light of this standard, the court does not accept

Badish's conclusion that she has been a victim of identity theft

simply because she noted a charge from Staples on her bank

statement that was unknown to her, but was later removed by the

bank. Accordingly, the court dismisses damages of alleged identity

theft from all of Badish's claims.  On the other hand, the court

accepts, for the purpose of ruling on the motion to dismiss,

Irwin's conclusion that he has been a victim of identity theft

because it is adequately supported by multiple factual allegations

---

[8] In Papasan, the court rejected the petitioners allegation
they had been deprived of a minimally adequate education because
they failed to "allege that schoolchildren in the Chickasaw
Counties are not taught to read or write; they do not allege that
they receive no instruction on even the educational basics; they
allege no actual facts in support of their assertion that they have
been deprived of a minimally adequate education." Papasan, 478
U.S. at 286.

that are suggestive of identity theft, and thus Irwin's claim of identity theft sufficiently confers Article III standing.

### 3. The Risk of Future Identity Theft and Associated Mitigation Efforts

The Eleventh Circuit has not specifically determined whether the risk of future identity theft and associated mitigation efforts are sufficient as injuries in fact for purposes of Article III standing. However, the Eleventh Circuit Court of Appeals has held that "[w]hen a plaintiff cannot show that an injury is likely to occur immediately, the plaintiff does not have standing to seek prospective relief even if he has suffered a past injury." 31 Foster Children v. Bush, 329 F.3d 1255, 1265 (11th Cir. 2003); see also City of Los Angeles v. Lyons, 461 U.S. 95, 98 (1983). Despite the lack of authority on the specific issue of the future threat of identity theft from the Eleventh Circuit, several other district courts have in fact reviewed data breach cases in which the plaintiff claims the risk of future identity theft and associated mitigation efforts as damages. This court's survey of those decisions reveals that a majority of those other courts ruled that such alleged damages are not sufficient to constitute an injury in fact for purposes of Article III standing.[9] However, as explained

---

[9] See Randolph v. ING Life Insurance and Annuity Co., 486 F.Supp.2d 1 (D. D.C. 2007)(holding that insureds' alleged increased risk of identity theft was not injury in fact sufficient for

10

in Bell v. Acxiom Corporation, 2006 WL 2850042, *2 (E.D. Ark. 2006), if the complaint sufficiently alleges that identity theft actually occurred, then the plaintiff's claims of mitigation expenses and the increased risk of identity theft were sufficient as damages.  Therefore, as long as the plaintiff sufficiently pled that he or she actually suffered identity theft, the court will allow recovery of damages associated with the risk of future identity theft and associated mitigation efforts.

In this case, both Irwin and Badish made the conclusory allegation that they were victims of identity theft.  However, as explained above in Section II. C. 2., the court rejected Badish's conclusory allegation of identity theft.  Accordingly, the court dismisses Badish's claimed damages of the risk of future identity

---

standing); Walters v. DHL Express, 2006 WL 1314132, *5 (D.C. Ill. May 12, 2006)(dismissing claim for damages of increased risk of identity theft, reasoning that damages for risk of identity theft would be based on speculation); Stollenwerk v. Tri-West Healthcare Alliance, 2005 WL 2465906, * 4 (D. Ariz. Sept 6, 2005); Guin v. Brazos Higher Education Service Corp., Inc., 2006 WL 288483, *5 (D. Minn. Feb 7, 2006)(rejecting argument that an increased risk of identity theft constituted damages); Key v. DSW Inc., 454 F.Supp.2d 684 (S.D. Oh. Sept. 27, 2006); Giordano v. Wachovia Securities, LLC, et al., Civil No. 06-476, 2006 WL 2177036 (D. N.J. July 31, 2006); contra Ruiz v. Gap, Inc., 540 F.Supp.2d 1121 (N.D. Cal. Mar. 24, 2008)(holding that an injury of increased risk of identity theft was sustained when personal information on work laptop computer was stolen); Piscota v. Old National Bancorp, 499 F.3d 629 (7th Cir. 2007); Caudle v. Towers, Perrin, Fosrter & Crosby, Inc., 580 F.Supp.2d 273 (S.D. N.Y. 2008); Witriol v. LexisNexis Group, 2006 WL 4725713 (N.D. Cal. 2006).

theft and associated mitigation efforts. Regarding Irwin's allegations of the same, the court concludes that the motion to dismiss with regard to those damages should be denied because he sufficiently alleged that he was in fact a victim of identity theft.

### D.    Summary of the Court's Ruling on Rule 12(b)(1) Motion

For the reasons set forth above, the court concludes that it lacks subject matter jurisdiction to hear the merits of Badish's claims because she has not suffered an actual injury and thus lacks Article III standing. More specifically, Badish lacks Article III standing because mere exposure of her PFI is not sufficient to constitute an injury, the court rejected her conclusory allegation that she was a victim of identity theft, and the rejection of the identity theft allegation prevents Badish from recovering damages for the risk of future identity theft and associated mitigation efforts. Therefore, only Irwin has Article III standing in this case and his claimed damages of identity theft and mitigation efforts to prevent the same survive the Rule 12(b)(1) motion to dismiss.

### III. Motion to Dismiss under Rule 12(b)(6) (failure to state a claim)

#### A.    Rule 12(b)(6) Legal Standard

A Rule 12(b)(6) motion requires an assessment of whether the plaintiff has set forth claims upon which this court may grant relief.  In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true, <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, <u>Duke v. Cleland</u>, 5 F.3d 1399, 1402 (11th Cir. 1993).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations:

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true.

<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). Ultimately, the complaint is required to contain "only enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 570.  But, dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised.  <u>Id.</u>  In light of this standard, the court reviews each of the counts, with respect to Irwin, alleged in the complaint to determine whether dismissal is warranted.

13

**B.   Parties' Arguments**

In its motion to dismiss, RBSW argues that Irwin failed to sufficiently state a claim for negligence, breach of an implied contract, and breach of a third-party beneficiary contract.   In support of these arguments, RBSW relies heavily upon Twombly and asserts that Irwin's failure to plead enough facts to state a claim to relief that is plausible on its face, not one that is merely conceivable, is fatal to all three counts of the SAC.   The court does not agree.

**C.   Court's Analysis**

**1.   Choice of Law**

In this case, Irwin, a resident of Pennsylvania, is suing a Georgia corporation for negligence, breach of an implied contract, and breach of a third party beneficiary contract.   Accordingly, these three claims present a choice of law question for the court. When considering a choice of law question, a federal court sitting in diversity is to apply the choice of law rules of the forum state, here Georgia. Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487 (1941).

Under Georgia's choice of law rules, the substantive law to be applied in a tort case is governed by the doctrine of *lex loci delicti*, the law of the place of the wrong. Risdon Enterprises,

<u>Inc. v. Colemill Enterprises, Inc.</u>, 324 S.E.2d 738 (Ga. Ct. App.
1984). The place of the wrong is where the injury is sustained,
and not where the last tortious act causing the injury occurred.
<u>See</u> <u>Best Canvas Products & Supplies v. Ploof Truck Lines, Inc.</u>, 713
F.2d 618, 621 (11th Cir. 1983) ("Georgia follows the traditional
rule that in tort actions, the law of the place of the injury- or
*lex loci delicti*- governs the resolution of the substantive
issues"). In accordance with this standard, the court concludes
that the alleged damages to Irwin under the negligence claim (tort)
occurred in Pennsylvania, where he resides, and thus will apply the
substantive law regarding a negligence claim of that state.

In contract actions, Georgia follows the traditional *lex loci
contractus*. <u>Convergys Corp. v. Keener</u>, 582 S.E.2d 84, 86 (Ga.
2003). Under this approach, contracts are to be governed as to
their nature, validity, and interpretation by the law of the place
where they were made, except where it appears from the contract
itself that it is to be performed in a state other than that in
which it was made, in which case the laws of that sister state will
be applied. <u>Id.</u> Counts II and III of the SAC involve contracts.
Specifically, in Count II, Irwin claims breach of an implied
contract with RBSW, and in Count III, Irwin claims he is a third
beneficiary of a contract between RBSW and his bank, Citizens Bank.
In both of these counts, Irwin claims that RBSW was contractually

obligated to securely maintain his PFI. Since RBSW is headquartered in Atlanta, Georgia, the court concludes that RBSW's contractual obligations, under both contract theories, were to be executed in Georgia. Accordingly, the court concludes that alleged contracts were to be performed in the state of Georgia, and thus, Georgia law is applicable.

### 2.   Count I: Negligence

Under Pennsylvania law, a claim for negligence requires proof of four elements: (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to the interests of another. Northwest Mutual Life Insurance Co. v. Babayan, 430 F.3d 121, 139 (3d Cir. 2005) (applying Pennsylvania law). Upon review of the SAC, the court concludes that Irwin sufficiently pled that (1) RBSW owed him a duty, (2) RBSW breached that duty, (3) there was a causal connection between the alleged breach and the resulting injury, and (4) he suffered actual damages. Accordingly, Irwin has set forth claims upon which this court may grant relief for negligence, and the motion to dismiss should be denied as to Irwin's claims in Count I.

### 3.    Count II: Breach of Implied Contract

In Count II, Irwin contends that he had an implied contract with RBSW that was breached because of the failure to keep his PFI secure.  Under Georgia law,[10] an implied-in-fact contract is one not created or evidenced by distinct and explicit language, but inferred by the law as a matter of reason and justice.  Classic Restorations, Inc. v. Bean, 272 S.E.2d 557 (Ga. Ct. App. 1980)(citations omitted).  Such contracts arise from the nonverbal conduct of the parties.  J.M. Clayton Co. V, Martin, 339 S.E.2d 280 (1985).  In the SAC, Irwin claims that he entered an implied contract with RBSW such that RBSW agreed to properly safeguard his PFI.  Irwin further contends he would not have provided his PFI without RBSW's agreement to protect it.  Finally, RBSW's failure to prevent improper access to its computer systems and Irwin's PFI constituted a breach of their implied contract.  Based upon these factual allegations, the court concludes that Irwin has set forth claims upon which this court may grant relief for breach of an implied contract, and the motion to dismiss should be denied as to Irwin's claims in Count II.

---

[10] RBSW improperly applied Georgia's *lex loci contractus* rule and thus incorrectly relied upon Pennsylvania law in support of its motion to dismiss Irwin's breach of an implied contract claim.

### 4.   Count III: Breach of Third Party Beneficiary of Contract

Under current Georgia law, "The beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract."   O.C.G.A. § 9-2-20(b). However,

> [i]n order for a third party to have standing to enforce a contract . . . it must clearly appear from the contract that it was intended for his benefit. The mere fact that [the third party] would benefit from performance of the agreement is not alone sufficient. Unless such an intention is shown on the face of the contract, defendant is under no duty [to the third party] and consequently plaintiff acquires no right as the third party beneficiary. A contract is intended to benefit a third party when the promisor engages to the promisee to render some performance to a third person.

Scott v. Mamari Corp., 530 S.E.2d 208 (Ga. Ct. App. 2000)(citations and punctuation omitted).

In Count III of the SAC, Irwin claims to be a third-party beneficiary of a contract between his bank, Citizens Bank, and RBSW.  More specifically, Irwin alleges that Citizens contracted with RBSW for the issuance and processing of gift cards to its customers, and as part of that agreement, it was implied that RBSW would employ commercially reasonable efforts to prevent unauthorized or unlawful access to Citizens's customers' PFI.  In sum, Irwin maintains that, as a Citizens customer and recipient of

18

one of the RBSW gift cards, he was an intended third-party beneficiary of the agreement between Citizens and RBSW. Therefore, because of the failure to safeguard his PFI and the resulting alleged identity theft, Irwin contends that RBSW breached its contract with Citizens, and he is entitled recovery as a third-party beneficiary. The court concludes that Irwin has alleged facts upon which this court may grant relief for breach of a third-party beneficiary contract, and the motion to dismiss should be denied as to Irwin's claims in Count III.

## IV.    Class Certification

Federal Rule of Civil Procedure 23(c)(1)(A) mandates that "[a]t an early practicable time after a person sues . . . as a class representative, the court must determine by order whether to certify the action as a class action." The court has not issued a class certification order in this case. Accordingly, in order to assist in the determination of class certification, the court issues the following guidance and timeline. RBSW's answer is due within 14 days of the date of this order. Thereafter, the parties shall conduct their Rule 26(f) conference and then submit a discovery plan to this court pursuant to Local Rule 16.2. The discovery plan should reflect the following:

(1) An initial discovery period of 60 days limited to issues of class certification and Irwin as a proposed class

representative.  The court has concerns regarding the typicality of the claims of potential class members and Irwin's selection as a class representative for those claims.[11]

(2) 30 day after closing of the limited discovery period, Irwin shall file a motion for class certification.  After such motion is filed, the parties shall file response/reply briefs in accordance with the local rules of this court.  The court will then consider the motion for class certification, hold an evidentiary hearing if necessary, and then issue further guidance to the parties regarding how this case will proceed.

## V.  Conclusion

For the reasons set forth above, the court hereby GRANTS the parties' joint motion for leave to file excess pages [Doc. No. 57], and DENIES in part and GRANTS in part the defendant's motion to dismiss [Doc. No. 51].  Specifically, the court denies the motion to dismiss as to Irwin's claims, and grants the motion to dismiss as to Badish.  Also, the motion is granted with regard to Irwin's

---

[11] "While it is true that a trial court may not properly reach the merits of a claim when determining whether class certification is warranted, this principle should not be talismanically invoked to artificially limit a trial court's examination of the factors necessary to a reasoned determination of whether a plaintiff has met her burden of establishing each of the Rule 23 class action requirements." <u>Love v. Turlington</u>, 733 F.2d 1652, 1564 (11th Cir. 1984)(citations omitted).

alleged damages of "exposure of PFI" and interest on unauthorized bank and credit charges.

RBSW's answer is due within 14 days of the date of this order. Thereafter, the parties shall conduct their Rule 26(f) conference and then submit a discovery plan to this court pursuant to the directives above. Then, within 30 days of the close of the limited discovery period, Irwin shall file a motion for class certification.

SO ORDERED, this 5th day of February, 2010.


/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge

21